(110 App. Div. 876)

### FLEMING v. BRAUER.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

1. SLANDER—ACTION—EVIDENCE—SUFFICIENCY.

In an action for slander in charging that plaintiff neglected his official duties as dockmaster and was guilty of oppression and extortion, evidence *held* to sustain a verdict for defendant.

2. APPEAL—REVIEW OF EVIDENCE.

In an action for slander, a verdict for defendant will not be set aside as against the evidence, unless it clearly indicates passion or prejudice.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, §§ 3938-3943.]

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by James J. Fleming against William W. Brauer. From an order setting aside a verdict in favor of defendant, he appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and HOUGHTON, JJ.

L. E. Warren, for appellant.
Joseph A. Shay, for respondent.

McLAUGHLIN, J. This action was brought to recover damages for slander. The complaint alleged that shortly prior to the 17th of March, 1902, the defendant, in the presence of McDougal Hawkes, commissioner of docks of the city of New York, and of other persons, slandered the plaintiff, who is a dockmaster of the city, by saying, in substance, that between January 1 and March 6, 1902, the plaintiff, as dockmaster, improperly interfered with the Brauer Steamship

Company, a corporation of which the defendant is the president, in its lawful use of pier 33, East river; that the plaintiff, contrary to the duties of his office as such official, refused to inform the defendant of the rates of wharfage of pier 33; that he failed to inform him that the steamship company could not have the sole and exclusive use of the pier; that he refused to confer with the defendant in relation to docking the company's vessels, and also declined to permit barges to place goods upon the dock which were about to be placed on board of one of the steamship company's boats; that the plaintiff, instead of referring the defendant to the dock department in regard to rates, etc., of the pier, referred him against defendant's protest to one Galleher, who is not connected with the department; that the plaintiff, acting in collusion with Galleher and one Bowman, obtained from the defendant a payment, under protest, of $500 for the rent of the pier by the steamship company for the month of February, 1902; and that the real rent of the same was less than $162.87. The complaint further alleges that the words used were intended by the defendant to charge that the plaintiff, while dockmaster, neglected his official duties, was guilty of criminal acts of oppression, and conspired with Galleher and Bowman for the purpose of criminally extorting money from the defendant and the steamship company, and of defrauding the city of New York. The answer denied the material allegations of the complaint. The jury found a verdict for the defendant, which the court set aside as against the weight of evidence, and defendant appeals.

I do not think the verdict is against the weight of evidence, as a brief consideration of it will show. The plaintiff's principal witness was Commissioner Hawkes, who testified that the defendant called upon him and said that he, as president of the steamship company, was being bothered by the plaintiff, who was interfering with his use of the pier; that he refused to permit freight to be delivered on the pier, which was about to be loaded on one of the steamship company's vessels; that he declined to give the rates of wharfage, and refused to confer with him concerning the docking of the vessels, and had referred him to one Galleher, and the plaintiff, in connection with Galleher and one Bowman, had obtained $500 from him for wharfage dues. The plaintiff himself testified substantially to the same facts, and, in addition, stated that in conversation with the defendant the defendant had stated that the plaintiff had not hands enough to hold the money which he (plaintiff) had demanded from him. When asked, on cross-examination, whether he had not been instrumental in bringing the defendant and Galleher together, by means of telephonic communication, he answered that he did not remember it; and this was as strong as he would testify on that subject. Plaintiff's witness Farley testified that his recollection of the conversation which took place between the defendant and Commissioner Hawkes was that the defendant stated that plaintiff was interfering with his use of the dock and had refused to allow him to land freight there, that he had referred him to somebody outside of the department for information, and that defendant had paid $500 to somebody for the privilege of the pier. Plaintiff's witness Phelan corroborated the wit-

ness Farley and also Hawkes as to the conversation which occurred between the latter and the defendant. Plaintiff's witness Galleher testified that Bowman first came to him as the representative of the defendant, and asked him to obtain a dock for the boats of the steamship company, and that Bowman gave him $400 for the docking privilege, out of which he paid $168 to the city, and put the remainder in his pocket as compensation for past favors which he had shown the steamship company.

The defendant testified that he went to the plaintiff for the purpose of procuring a dock, and the plaintiff then informed him that he would have to see Mr. Galleher; that thereupon the defendant had a conversation with Galleher, who thereafter sent Bowman to him, and that he then paid Bowman $500 for the dock, and took a receipt therefor; that disputes thereafter arose between himself and the plaintiff concerning the use of the dock, and he complained to Commissioner Hawkes about it; that in making his complaint he told the commissioner that the plaintiff was delaying the work on the dock; that he would not allow goods to be taken on the dock that were about to be loaded on the steamship company's vessel; that nothing was said about collusion between Bowman, Galleher, and the plaintiff, although he had shown the commissioner the receipt for the $500 which he had paid to Bowman; that no statements were made by him concerning plaintiff, except as to his interference with the work on the pier, and that he sent defendant to Galleher and defendant had paid $500 to Bowman. He was corroborated by the witnesses Raynor and Gargan, both of whom testified that nothing was said about the plaintiff being in collusion with Galleher or Bowman, and that defendant did not charge the plaintiff with having received any part of the $500.

It might well be doubted whether the testimony on the part of the plaintiff tended to establish the allegations of his complaint, or would have justified a verdict in his favor. When it is considered in connection with the testimony offered by the defendant, the verdict certainly cannot be said to be against the weight of evidence. If the testimony offered by the defendant were true, and it was for the jury to say whether or not it was, then the defendant had not slandered the plaintiff. Indeed, all he did was to complain to Commissioner Hawkes as to the manner in which he had been treated by the plaintiff, with reference to the use of the dock which he had leased. He had a right to make this complaint. Any person who has business transactions with any official of the city government if not satisfied with the manner in which he has been treated may, without subjecting himself to liability, complain to a superior officer. This is all that the defendant did, if his statement, corroborated as it is by several witnesses, is true. In addition to this, in an action of this character, a verdict in favor of the defendant is rarely set aside as against the weight of evidence (Hurtin v. Hopkins, 9 Johns. 36; Ex parte Baily, 2 Cow. 479; Paddock v. Salisbury, Id. 811; Rundell v. Butler, 10 Wend. 119; Jarvis v. Hatheway, 3 Johns. 180, 3 Am. Dec. 473; Townsend on Slander & Libel [4th Ed.] § 295); and, when it is, the evidence must be so clearly overwhelming that the court can see injustice has been

done and the verdict of the jury is due to passion or prejudice on their part and not the result of a proper consideration of the evidence. This cannot be said in this case when all of the testimony is considered.

The order appealed from, therefore, must be reversed, and the verdict of the jury reinstated, with costs to the appellant. All concur, except PATTERSON, J., who dissents.